IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LABARAN K. MOHAMMED, | No. C 12-3308 RMW (PR) |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |
| v. | |
| P.D. BRAZELTON, Warden, | |
| Respondent. | |

Petitioner, a state prisoner proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the petition should not be granted. Respondent has filed an answer addressing the merits of the petition. Although given an opportunity, petitioner has not filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claims presented and DENIES the petition.

**BACKGROUND**

Petitioner was charged and convicted by a jury of second degree robbery. The jury found true several enhancements. On March 15, 2010, the trial court sentenced petitioner to a term of five years in state prison. On September 29, 2011, the California Court of Appeal affirmed. On December 14, 2011, the California Supreme Court denied a petition for review. Petitioner filed the instant federal habeas petition on June 27, 2012.

1    At trial, the victim of the robbery, Satnam Singh, testified that he was working at the
2 Hayward Food and Liquor on July 19, 2006 at 5:45 p.m., when petitioner entered the store with a
3 gun in his hand. (Resp. Ex. 7 at 1-2.) Petitioner was wearing a white T-shirt and cap, and his
4 face was partially covered with a cloth. (Id. at 2.) Petitioner pointed the gun at Singh and
5 demanded all the money. (Id.) As petitioner was waiting, the cloth covering petitioner's face
6 gradually came down so that Singh was able to see petitioner's eyes and nose on the right side of
7 petitioner's face. (Id.) Then, as petitioner was leaving the store with the money, petitioner
8 turned around, and Singh was able to see almost all of petitioner's face. (Id.)

9    Petitioner got into the front passenger seat of a black-colored car that was parked outside.
10 (Id.) Another person drove the car away. (Id.) As the car was leaving, Singh wrote down the
11 license plate number and called the police to report the robbery. (Id.) After running the license
12 plate number, the Hayward Police Department found that the car registration was traced to Jamal
13 Williams, the driver of the car. (Id.) The police drove to Williams' house around 6:30 p.m., and
14 saw a vehicle parked in front of the residence that matched the description given by Singh. (Id.)
15 Two people were standing near the vehicle. (Id.) Once the two people were detained, Singh was
16 brought to identify the individuals. (Id.) Singh positively identified the car and petitioner, but
17 was not able to identify the driver. (Id.) A store surveillance video of the robbery was played
18 for the jury and described by Singh during Singh's testimony. (Id. at 2 n.2.)

19                                      **DISCUSSION**

20 A.     Standard of Review

21    This court may entertain a petition for writ of habeas corpus "in behalf of a person in
22 custody pursuant to the judgment of a state court only on the ground that he is in custody in
23 violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).
24 Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court
25 may not grant a petition challenging a state conviction or sentence on the basis of a claim that
26 was reviewed on the merits in state court unless the state court's adjudication of the claim
27 "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,
28 clearly established federal law, as determined by the Supreme Court of the United States; or

1  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of
2  the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The first prong
3  applies both to questions of law and to mixed questions of law and fact, Williams v. Taylor, 529
4  U.S. 362, 384-86 (2000), while the second prong applies to decisions based on factual
5  determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340.

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir. 2000). Here, that decision is the California Court of Appeal.

B.   Petitioner's Claims

As grounds for federal habeas relief petitioner claims that: (1) trial counsel was ineffective for failing to present an expert on eyewitness identification, and (2) the trial court erred in imposing the upper term without stating any lawful reasons for doing so, in violation of Apprendi, Cunningham, and Blakely.

1. Ineffective assistance of counsel

Petitioner claims that counsel rendered ineffective assistance by failing to employ an expert witness to challenge Singh's identification of petitioner. Petitioner argues that there is no reasonable explanation why counsel did not employ an expert, and that there was a reasonable probability that, had counsel had an expert, the outcome of trial would have been different.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

The California Court of Appeal rejected petitioner's claim on the ground that the record did not support petitioner's claim that counsel rendered deficient performance or that petitioner was prejudiced by counsel's failures. The California Court of Appeal recounted counsel's actions at trial:

> Counsel vigorously cross-examined the victim and effectively explored the inconsistencies in his testimony, with a pronounced emphasis on the vagaries of identification under the circumstances presented, including the suspect's partially obscured face, the "stressful" nature of the incident, the presence of the gun that diverted the victim's attention, the brief observation of defendant's appearance by the victim, and the fact that both defendant and Williams were "young," "African-American men." The court gave instructions to the jury that recited in detail the numerous pertinent factors to consider in evaluating the testimony of a witness (CALCRIM No. 226) and the reliability of the eyewitness identification of defendant (CALCRIM No. 315). The jury instructions covered much of the content of the expert testimony, and carried the weight of direction from the court. During closing argument defense counsel emphasized the inconsistencies in Singh's testimony, with particular reference to his mistaken report of the color and license plate number of the car. Counsel also reiterated the problematic attributes of the identification testimony: the victim was "shaken up" and "confused," he identified a "young man from a different race," the observation of the robber was "under very stressful conditions for a matter of seconds." In addition, counsel noted that Singh's identification at the scene of the detention, with only defendant and Williams present, was not the result of a "proper method of identification."

(Resp. Ex. 7 at 5.)

1     Here, even assuming that counsel's performance was deficient, the state court's decision
2 was not unreasonable when it concluded that there was no prejudice.  Petitioner did not present
3 any evidence that an expert's testimony could have assisted the jury in any way, or that the jury
4 could not have come to the same conclusion on its own from listening to defense counsel's
5 arguments.  Moreover, petitioner's desire for an expert witness is based only on speculation that
6 the expert would have testified to something non-cumulative, which is insufficient to establish
7 prejudice.  *See Gonzalez v. Knowles*, 515 F.3d 1006, 1015-16 (9th Cir. 2008) ("As to the failure
8 to investigate mental health mitigation, Gonzalez does not contend that he actually suffered from
9 a mental illness; he merely argues that if tests had been done, and if they had shown evidence of
10 some brain damage or trauma, it might have resulted in a lower sentence. Such speculation is
11 plainly insufficient to establish prejudice.").  Finally, the Ninth Circuit has determined that
12 failure to call an expert witness on the unreliability of eyewitness identification does not
13 constitute ineffective assistance because "skillful cross examination of eyewitnesses, coupled
14 with appeals to the experience and common sense of jurors, will sufficiently alert jurors to
15 specific conditions that render a particular eyewitness identification unreliable," which precludes
16 a finding of prejudice under Strickland.  See Howard v. Clark, 608 F.3d 563, 573-74 (9th Cir.
17 2010).  The record demonstrates that counsel's actions sufficiently alerted jurors to the
18 conditions that suggest Singh's eyewitness identification was unreliable and the failure to call an
19 expert witness would not have led to a different outcome.
20     Because petitioner failed to demonstrate prejudice, it is unnecessary to address the
21 deficiency prong of Strickland.  The state court's conclusion that counsel did not rendered
22 ineffective assistance of counsel was not contrary to or an unreasonable determination of clearly
23 established Supreme Court law.  Accordingly, petitioner is not entitled to habeas relief on this
24 claim.
25     2.     Sentencing error
26     Petitioner claims that the trial court violated Apprendi v. New Jersey, 530 U.S. 466
27 (2000), Blakely v. Washington, 542 U.S. 296 (2004), and Cunningham v. California, 549 U.S.
28 270 (2007), by sentencing him to the upper term without having found valid categories of

1  aggravating circumstances to justify such imposition.  The California Court of Appeal rejected
2  petitioner's claim, concluding that although the trial court's statements did not explicitly refer to
3  aggravating factors, they did explain the trial court's reasons for imposing the upper term, which
4  was sufficient to support the sentence.  (Resp. Ex. 7 at 8.)

5  The Sixth Amendment to the United States Constitution guarantees a criminal defendant
6  the right to a trial by jury.  U.S. Const. amend. VI.  Apprendi, 530 U.S. at 120, and its progeny
7  extended a defendant's right to trial by jury to the fact finding used to make enhanced sentencing
8  determinations as well as the actual elements of the crime.  "Other than the fact of a prior
9  conviction, any fact that increases the penalty for a crime beyond the prescribed statutory
10 maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Id. at 488-90.
11 The "statutory maximum" for Apprendi purposes is the maximum sentence a judge could impose
12 based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the
13 relevant "statutory maximum" is not the sentence the judge could impose after finding additional
14 facts, but rather is the maximum he or she could impose without any additional findings.
15 Blakely, 542 U.S. at 303-04.

16 In Cunningham, 549 U.S. at 288-89, the Court held that California's determinate
17 sentencing law ("DSL") - which used a sentencing triad of lower/middle/upper terms - violated
18 the Sixth Amendment because it allowed the sentencing court to impose an upper term sentence
19 based on aggravating facts that it found to exist by a preponderance of the evidence.  On March
20 30, 2007, in response to the Supreme Court's suggestion in Cunningham that California could
21 cure any constitutional defect in section 1170(b) by leaving the selection of an appropriate
22 sentence to the judge's discretion, Cunningham, 549 U.S. at 293-94, the California Legislature
23 enacted Senate Bill 40, which amended section 1170(b).  See Cal. Stats. 2007, ch. 3 (S.B.40), §
24 3, eff. Mar. 30, 2007; Butler v. Curry, 528 F.3d 624, 630 n.5 (9th Cir. 2008) (acknowledging
25 section 1170(b)'s amendment).  Under amended section 1170(b), a trial court still exercises its
26 discretion in selecting among the upper, middle or lower terms, but no additional fact finding is
27 required to impose an upper or lower term.  See Butler, 528 F.3d at 652 n.20 ("imposition of the
28

1  lower, middle, or upper term is now discretionary and does not depend on the finding of any
2  aggravating factors"); accord People v. Sandoval, 41 Cal. 4th 825, 843-45 (2007).

3  Here, the trial court sentenced petitioner in 2010 – after the effective date of the
4  amendment to section 1170(b).  The applicable law at sentencing therefore was California's
5  amended sentencing scheme, which the court finds complies with Cunningham as applied to
6  petitioner.  Specifically, under amended section 1170(b), the trial court was not required to find
7  an additional fact in order to impose the upper term sentence; rather, the decision to impose a
8  lower, middle, or upper term was deemed discretionary.  See Butler, 528 F.3d at 652 n.20.

9  In view of California's decision to follow Cunningham's suggested sentencing scheme in
10  order to avoid a Sixth Amendment violation, the state court's rejection of petitioner's Sixth
11  Amendment claim under such sentencing scheme cannot be said to be contrary to, or an
12  unreasonable application of, clearly established Supreme Court precedent.  See 28 U.S.C.
13  § 2254(d); accord Neri v. Allison, No. 10-2867 RMW, 2012 WL 1067569, *12 (N.D. Cal. March
14  28, 2012); McCowan v. Marshall, No. 10-0473 CRB, 2011 WL 1544490, *3 (N.D. Cal. April 25,
15  2011).

## CONCLUSION

17  The petition for a writ of habeas corpus is DENIED.

18  The federal rules governing habeas cases brought by state prisoners require a district
19  court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its
20  ruling.  Petitioner has failed to make a substantial showing that his claims amounted to a denial
21  of his constitutional rights, or demonstrate that a reasonable jurist would find the denial of his
22  claims debatable or wrong.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Accordingly, a COA
23  is DENIED.

24  The clerk shall terminate all pending motions, enter judgment, and close the file.

25  IT IS SO ORDERED.

26  DATED: _____                    _____
27                                                                 RONALD M. WHYTE
                                                                        United States District Judge
28

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

LABARAN K. MOHAMMED,

          Plaintiff,

  v.

P.D. BRAZELTON,

          Defendant.

Case Number: CV12-03308 RMW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 3, 2014, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Labaran K Mohammed G58330
PVSP
B3-207-UP
PO BOX 8500
Coalinga, CA 93210

Dated: September 3, 2014

                              Richard W. Wieking, Clerk
                              By: Jackie Lynn Garcia, Deputy Clerk